Shirley HARRIS, Plaintiff,

v.

UNITED STATES of America, et al., Defendants.

Civil No. 95–1778–R.

United States District Court,
S.D. California.

Feb. 26, 1996.

**344**

Janice Atkinson, Janice Atkinson & Associate, San Diego, CA, for Plaintiff.

John Scherling, Assistant United States Attorney, United States Attorney's Office, Federal Office Building, San Diego, CA, for Defendant.

## ORDER GRANTING MOTION TO DISMISS

RHOADES, District Judge.

This matter is before the Court on a motion to dismiss brought by Defendant Robert E. Rubin, Secretary of the United States Department of the Treasury, ("Rubin").[1] For the reasons stated below, Defendant's motion to dismiss is granted.

### I. Background

On November 18, 1994, Plaintiff Shirley Harris ("Harris"), a Special Agent with the United States Customs Service, initiated a formal administrative complaint against her employer agency for discrimination. During the 180 day period for agency review, Harris consented to a 90 day extension pursuant to 29 C.F.R. § 1614.108(e). On June 8, 1995, Plaintiff was notified by letter pursuant to 29 C.F.R. § 1614.108(f) that the investigation of her complaint was completed and that she had three options: (1) request a hearing before an administrative judge; (2) request a final decision from the agency pursuant to § 1614.110; or (3) terminate her complaint.[2]

In the letter of June 8, 1995 sent to Harris, Harris was informed that if she were to choose option C, her "complaint will be closed and no further action will be taken by the Department." Defendant's Opposition, at Exhibit C. She was also informed that if

---

1. The complaint also named the United States of America, the United States Department of the Treasury, and the United States Customs Service as defendants. Both parties agree that Robert Rubin is the only appropriate defendant and that all other defendants should be dismissed. Accordingly the complaint is dismissed as against all defendants except for Robert Rubin in his official capacity.

2. The options on the form were as follows:
 A. In accordance with § 1614.109(a) of the Equal Employment Opportunity Commission (EEOC) Regulations, I request a hearing before an administrative judge of the EEOC;
 B. In accordance with § 1614.110 of the EEOC Regulations, I request a final decision by the Department of the Treasury without a hearing;
 C. I do not intend to pursue this matter further, and am withdrawing the complaint(s) cited above. I understand that the complaint will be closed, and the Department will have no obligation to further process the complaint. *See* Defendant's Opposition at Exhibit C.

she "did not respond to this letter within thirty days of receipt, the regulations require that the Department issue a final decision on the merits of [her] complaint based on the information already contained in the investigative file." *Id.* Finally, in this letter, as well as in other correspondence with Plaintiff, Harris was informed that if she had "any questions regarding this matter, please contact Jim Mackie at (415) 556-0237." *Id.*

Harris returned the Election Form after having checked Box C, indicating that she wished to withdraw her complaint. In addition to checking Box C, Harris added the following notation to the form: "I do not intend to pursue this matter further at the administrative level." In response to Harris' reply, the investigation of Harris' complaint was terminated, no final decision was ever made at the agency level and Harris was sent notice that the agency had "terminated processing of the complaint." *See* Defendant's Opposition at Exhibit E. Harris did not respond to the agency's notification of termination.

## II. Discussion

 In order to bring a Title VII cause of action in a district court, Harris must first exhaust her administrative remedies. *Greenlaw v. Garrett,* 59 F.3d 994, 997 (9th Cir.1995) (citing *Brown v. General Services Administration,* 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976)). Exhaustion requires that a plaintiff comply with regulatory and judicially imposed exhaustion requirements. *Id.* Judicially imposed exhaustion requirements for Title VII are not jurisdictional, but are treated as conditions precedent which are subject to waiver and estoppel. *See Vinieratos v. United States Department of Air Force,* 939 F.2d 762, 768 n. 5 (9th Cir.1991); *Greenlaw,* 59 F.3d at 997 n. 8; *Stache v. International Union of Bricklayers and Allied Craftsmen,* 852 F.2d 1231, 1233 (9th Cir.1988).[3] The Ninth Circuit has

recognized both a requirement that a claimant cooperate with the agency, and that the claimant not abandon her claims. *See Vinieratos,* 939 F.2d at 772 ("[A]n administrative exhaustion requirement is meaningless if claimants may impede and abandon the administrative process and yet still be heard in the federal courts.").

## A. Abandonment of Claims

 Among the judicially imposed exhaustion requirements recognized by the Ninth Circuit is that a claimant cannot abandon her claims before a final decision is reached. The Ninth Circuit reasoned that allowing claimants who abandon their claims in front of the administrative agency to proceed in federal court would "frustrate the congressional policy favoring administrative resolution of complaints for no discernible reason." *Id.* The abandonment of the administrative process "may suffice to terminate an administrative proceeding before a final disposition is reached, thus preventing exhaustion and precluding judicial review." *Vinieratos,* 939 F.2d at 770 (citing *Rivera v. United States Postal Service,* 830 F.2d 1037 (9th Cir.1987), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1737, 100 L.Ed.2d 200 (1988)). Any other rule would "tend to frustrate the ability of the agency to deal with complaints. All participants would know that at any moment an impatient complainant could take his claim to court and abort the administrative proceedings. Moreover, such a course would unnecessarily burden courts with cases that otherwise might be terminated successfully by mediation and conciliation." *Vinieratos,* 939 F.2d at 771 (citing *Purtill v. Harris,* 658 F.2d 134 (3d Cir.1981), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1365 (1983)).

The Ninth Circuit also reviewed the decisions of other circuits in reaching their determination. *Vinieratos,* 939 F.2d at 768–771. In *Johnson v. Bergland,* 614 F.2d 415, 418 (6th Cir.1980), the Sixth Circuit adopted the

---

**3.** The case law indicates that if a claim were never presented to the agency, then the district court is deprived of jurisdiction and equitable considerations cannot remedy the lack of jurisdiction. *See, e.g., Macy v. Dalton,* 853 F.Supp. 350, 356–57 (E.D.Cal.1994). However, once the claims are presented to the agency, the exhaus-

tion requirements are judicially imposed and subject to equitable considerations.

The Government contends that Harris' abandonment of her claim means that the claim was not presented. The Court rejects this contention based on the case law cited in the text, above.

district court's ruling that "if the agency does not reach the merits of the complaint because the complainant fails to comply with the administrative procedures, the Court should not reach the merits either. Otherwise the complainant might be dilatory at the administrative level, knowing that he can get into federal court anyway." *Id.* (citing *Ettinger v. Johnson*, 518 F.2d 648 (3d Cir.1975)).

■ Here, Harris fully cooperated with all EEOC proceedings throughout the pendency of her case. However, at the moment when the Commission informed her that the investigation had been completed, she withdrew her complaint, apparently because she was impatient and wished to commence immediately in federal court.

Harris claims that she thought Option C gave her the option to dismiss her claims at the administrative level and go straight to the district court.[4] However, the plain language of the form certainly gives no such indication, and Harris has not asserted what led her to such a belief. Harris may have been representing herself before the agency and, if so, should not be held to have the knowledge and sophistication of an attorney versed in such matters. However, the agency also needs to be able to rely on Harris' own voluntary responses to questions put to her.[5] *See, e.g., Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 119, 133 L.Ed.2d 69 (1995) ("[P]ro se litigants are bound by the rules of procedure."). The letter sent with the form clearly stated that if Harris had any questions regarding the matters contained in the form that she could call Jim Mackie and gave Harris a phone number. If Harris was confused about the implications of the form, she would have been wise to call Mr. Mackie.

## B. 180 Day Rule

■ Finally, Plaintiff argues that she cooperated for 180 days and that under *Charles v. Garrett*, 12 F.3d 870, 874 (9th Cir.1995), this gives her the right to file in federal court regardless of whether she has met the exhaustion requirements. However, by written agreement, Harris voluntarily extended that 180 day time period by 90 days pursuant to § 1614.108(e). By voluntarily extending the time for agency determination, Harris was obligated to wait an extra 90 days before filing in federal court. *Charles,* although decided after § 1614.108(e), involved actions that transpired prior to the enactment of § 1614.108(e). *See Erickson v. West,* 876 F.Supp. 239 (D.Hawaii 1995) (reconciling *Charles* with § 1614.408, and finding complaint brought prematurely). In this case, this Court is also forced to reconcile *Charles* with the new provisions for extension of time. The Court finds that the best rule is that by agreeing to an extension of time under § 1614.108(e), a plaintiff is precluded from filing in federal court until the additional 90 day period expires. To rule otherwise would be to strip the 90 day extension provided for in § 1614.108(e) of any of the contemplated benefit. The agency would not be able to rely on the 90 day extension and the participants would know that at any time between end of the 180 day period and the end of the additional 90 days "an impatient complainant could take his claim to court and abort the administrative proceedings. Moreover, such

4. Indeed, Harris modified option C, by adding the notation "I do not intend to pursue this matter further at the administrative level." Harris argues that the Agency should have known by virtue of this note that Harris did not want to dismiss her complaint. To the contrary, the message indicates that Harris was well aware that by checking Box C she would terminate the action at the administrative level.

What the notation does indicate is that Harris may have been confused about the implications of withdrawing her complaint at the agency level. However, this would necessarily be true of any party who withdraws an administrative claim before final resolution with the intent of filing a complaint in federal court. If such a

misunderstanding would obviate the exhaustion requirements, the exhaustion requirements would be effectively stripped of significance.

5. Plaintiff contends that Option C is not an option provided by the Regulations. However, a complainant always has the option of dismissing a complaint. Defendants point out that the option is provided because "employees often do not wish to continue to pursue their grievances following a cooling off period or after the investigation has concluded." Defendants' Reply at 3 n. 1. Furthermore, Defendants state that to the best of their knowledge, this is "the first time anyone has claimed to be 'tricked' by the election form, which has been in use since 1992."

a course would unnecessarily burden courts with cases that otherwise might be terminated successfully by mediation and conciliation." *Vinieratos,* 939 F.2d at 771 (citing *Purtill v. Harris,* 658 F.2d 134 (3d Cir.1981), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1365 (1983)).

■ The 90 day extension is provided to permit an agency, with the consent of the complainant, to make a more thorough investigation into the merits of the complaint. Having agreed to such an extension, the complainant is then required to permit the agency the full remaining time to reach a final decision. Here, Harris abandoned her claim well within the additional 90 day period permitted by statute. Indeed, she abandoned her claim *after* receiving word from the agency that they had completed the investigation. Harris cannot take advantage of the 180 day rule after having voluntarily consented to giving the agency an additional 90 days to reach a final determination.

### III. Conclusion

■ Harris voluntarily abandoned her administrative remedies prior to exhaustion. "Impatience with the agency does not justify immediate resort to the courts." *Rivera,* 830 F.2d at 1039. As the court in *Vinieratos* clearly stated, "[w]here, as here, the complainant has only [her]self to blame for the absence of an administrative ruling on the merits of [her] claim, it is fair to conclude that [she] has failed to comply with the administrative exhaustion requirement. It is not the role of the federal judiciary to straighten out a mess that is the complainant's own doing." 939 F.2d at 773 (addressing dissent's argument that federal jurisdiction should lie where "the only body that is left to straighten out the mess is the federal judiciary"). Having abandoned her claims prior to a final determination by the agency, and prior to the expiration of the time within which the agency had to make such a determination, Harris cannot now bring this suit in federal court. The Court will dismiss the complaint without prejudice, however, to permit Harris to exhaust her administrative remedies, if still available. Accordingly, Harris' complaint is dismissed without prejudice.

IT IS SO ORDERED.