**James R. BANKSTON, Plaintiff–Appellant,**

v.

**Thomas E. WHITE, Secretary of the Army; United States of America, Defendants–Appellees.**

No. 02–15547.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 16, 2003.

Filed Oct. 1, 2003.

Jeffrey A. Dickerson, Reno, NV, for the plaintiff-appellant.

Gregory Addington, Assistant United States Attorney, Reno, NV, for the defendants-appellees.

Before HUG, GIBSON,* and FISHER, Circuit Judges.

* The Honorable John R. Gibson, Senior Circuit Judge, United States Court of Appeals for the

## OPINION

GIBSON, Senior Circuit Judge.

James Bankston appeals from the district court's dismissal of his Age Discrimination in Employment Act claim for lack of jurisdiction. The district court held that Bankston had failed to exhaust his administrative remedies because he voluntarily dismissed an appeal he had filed with the Merit Systems Protection Board. We reverse the district court's dismissal of Bankston's complaint.

Bankston was fired from his job as OSHA officer for the Department of the Army on February 25, 1999. He filed an appeal with the Merit Systems Protection Board on March 24, 1999, but then withdrew it on May 25, 1999, sixty-one days after filing. On May 26, the Board granted his motion to withdraw, which became the final decision of the Board on June 30, 1999. On July 14, 1999, Bankston notified the Equal Employment Opportunity Commission, or the EEOC, of his intent to file suit in federal court. He filed suit on September 23, 1999. The government moved to dismiss the suit, arguing that Bankston had to exhaust his administrative remedies and that he had not done so. The district court stayed the suit for 90 days to permit Bankston to try to reopen his appeal before the Board. Bankston tried to do so, but the Board treated his petition as an untimely appeal and dismissed it. In the meantime, the district court dismissed Bankston's suit without prejudice. On February 23, 2001, Bankston filed a second suit in federal court, which was dismissed for lack of subject matter jurisdiction.

Bankston now appeals from the dismissal of his second suit.

Eighth Circuit, sitting by designation.

■ Whether a plaintiff has exhausted administrative remedies as required before filing suit is a question of law which we review de novo. *Charles v. Garrett,* 12 F.3d 870, 873(9th Cir.1993).

■ This suit arises under the provisions of the Age Discrimination in Employment Act (known as the ADEA) applicable to federal employees, added by the Fair Labor Standards Amendments of 1974, Pub.L. No. 93–259, § 28(b)(2), 88 Stat. 74, as amended, 29 U.S.C. § 633a (2000). Unlike Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–16(c), the ADEA "contains no express requirement that a federal employee complainant seek administrative relief," *Stevens v. Dep't of Treasury,* 500 U.S. 1, 12, 111 S.Ct. 1562, 114 L.Ed.2d 1 (1991) (Stevens, J., concurring and dissenting), except that an employee who wishes to file suit without pursuing administrative remedies must give the EEOC notice of intent to sue at least 30 days before filing suit. *See* 29 U.S.C. § 633a(d)(allowing individual to file suit without filing EEOC complaint but requiring notice to EEOC of intent to sue) and 29 C.F.R. § 1614.201(a) (2002) ("As an alternative to filing a complaint under this part, an aggrieved individual may file a civil action in a United States district court under the ADEA ...."). Federal law does, however, allow an employee the option of pursuing administrative remedies, either through the agency's EEO procedures, *see* 29 U.S.C. § 633a(b) and 29 C.F.R. § 1614.106 (2002), or through the Merit Systems Protection Board. *See* 5 U.S.C. § 7702 (providing procedures for "mixed cases" where the employment action is reviewable by the Board and also is the basis for a discrimination claim).[1]

The government argues that the statute regarding the filing of "mixed cases" implicitly bars suit under the ADEA where a plaintiff has filed a Merit Systems appeal but has failed either to pursue it to an adjudication on the merits or else to allow 120 days to elapse without administrative action before filing suit. This jurisdictional bar is not set out explicitly in statute or regulation, but the government argues that it arises from the provisions of 5 U.S.C. § 7702, the Civil Service Reform Act, and that it is mandated by our cases.

I.

■ First, the government argues that specific provisions of 5 U.S.C. § 7702 abrogate the jurisdiction granted by the ADEA. We will not infer that one statute does away with jurisdiction expressly granted by another, *see INS v. St. Cyr,* 533 U.S. 289, 299, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), where the two statutes may easily be read to coexist peacefully. The government relies on the provisions of § 7702 specifying when a Merit Systems Board decision becomes judicially reviewable, 5 U.S.C. §§ 7702(a)(3), (b)(5), (c) and (d)(2)(A). Bankston has not satisfied the conditions prerequisite to such review. The government contends that Bankston's failure to satisfy these conditions bars jurisdiction over his ADEA claim. Since Bankston is not seeking review of a Merit Systems Board decision, these provisions specifying when suit can be filed for review of a Board decision are not applicable to his case and do not, by their terms, affect jurisdiction independently existing under the ADEA.

---

1. For background on the Civil Service Reform Act of 1978, which divides jurisdiction over federal employees' claims between the EEOC and the Merit Systems Protection Board, *see* 2

Barbara Lindemann and Paul Grossman, *Employment Discrimination Law* 1543–44, 1549–57 (3d ed.1996).

■ Second, the statute gives a claimant a right to file a lawsuit if the Merit Systems Board or agency fails to act on the complaint within 120 days (or, when the claimant petitions for EEOC review, if the EEOC fails to act within 180 days). 5 U.S.C. § 7702(e)(1). The government argues that the Civil Service Reform Act, by granting jurisdiction without a final agency action only after the 120– or 180–day waiting period, implicitly restricts jurisdiction granted by the ADEA at 29 U.S.C. § 633a(c). As we understand it, the government's argument is that if one could sue under the ADEA at any time, there would be no need for § 7702 to grant permission to sue after the waiting period; the government asks us to infer, from the grant of permission, that the grant was necessary. But § 7702 applies to claims that arise under statutes other than the ADEA, such as Title VII claims under 42 U.S.C. § 2000e–16, which are subject to an exhaustion of administrative remedies requirement. 5 U.S.C. § 7702(a)(1); 42 U.S.C. § 2000e–16(c). There is thus a reasonable explanation for why § 7702(e)(1) grants jurisdiction to sue after a waiting period that might be redundant for ADEA claims. Abridging jurisdiction granted under § 633a is not necessary in order for § 7702(e)(1) to make sense.

The government further argues that this court and others have interpreted § 7702(e)(1) to require that a government employee who dismisses a Merit Systems appeal cannot thereafter bring an ADEA suit on the same claim. In support of its theory that § 7702 bars jurisdiction over Bankston's lawsuit because he dismissed his Merit Systems appeal, the government relies on Title VII cases, such as *Vinieratos v. United States Dep't of Air Force*, 939 F.2d 762(9th Cir.1991), and *McAdams v. Reno*, 64 F.3d 1137 (8th Cir.1995). In *Vinieratos* and *McAdams*, the courts affirmed dismissal of the claims for lack of jurisdiction under Title VII where the claimant had abandoned Merit Systems appeals. Title VII, unlike 29 U.S.C. § 633a, contains an exhaustion of remedies requirement. 42 U.S.C. § 2000e–16(c). Both *Vinieratos* and *McAdams* relied on Title VII's exhaustion requirement. *Vinieratos*, 939 F.2d at 767–68 ("Title VII specifically requires a federal employee to exhaust his administrative remedies as a precondition to filing suit."); *McAdams*, 64 F.3d at 1141 ("Federal employees asserting Title VII claims must exhaust their administrative remedies as a precondition to filing a civil action in federal district court."). *Vinieratos* reasoned that "an administrative exhaustion rule is meaningless if claimants may impede and abandon the administrative process and yet still be heard in the federal courts." 939 F.2d at 772. The rationale of these cases, preventing end-runs around Title VII's exhaustion of remedies requirement, is inapplicable to a federal employee's ADEA claim, in which there is a statutory grant of jurisdiction not subject to any administrative exhaustion requirement (other than notifying the EEOC at least thirty days before filing suit, 29 U.S.C. § 633a(d), which Bankston did).

Although there are other cases holding that a federal employee who files a Merit Systems appeal becomes bound to exhaust that remedy before filing an ADEA suit, those cases are not predicated on the language of the Civil Service Reform Act, 5 U.S.C. § 7702(e)(1), but rather on prudential considerations of administrative efficiency originally developed in cases that were not decided under the Civil Service Reform Act. *See, e.g., Economou v. Caldera*, 286 F.3d 144, 149 n. 8 (2d Cir.2002) (stating exhaustion requirement, relying on *Wrenn v. Secretary*, 918 F.2d 1073, 1078(2d Cir.1990), which did not involve Civil Service Reform Act proceedings),

*cert. denied,* 123 S.Ct. 447 (2002); *Castro v. United States,* 775 F.2d 399, 404 (1st Cir.1985) (relying on *Purtill v. Harris,* 658 F.2d 134, 138 (3d Cir.1981), which did not involve Civil Service Reform Act proceedings). *But cf. Coffman v. Glickman,* 328 F.3d 619, 623–24 (10th Cir.2003) (in case including age discrimination claim, stating that exhaustion of Merit Systems remedies was required because rule was "consonant with the purpose of the Civil Service Reform Act"). We therefore will deal with these cases in part II, which discusses the history and parameters of the judicially-created exhaustion rule in federal employees' ADEA cases.

## II.

In addition to relying on 5 U.S.C. § 7702, the government relies on judicial precedent holding that a government employee who voluntarily pursues an administrative remedy must exhaust that remedy before bringing an ADEA suit on the same claim. Two of our Ninth Circuit cases dealing with exhaustion of administrative remedies in the context of a federal employee's ADEA claim, *Rivera v. United States Postal Serv.,* 830 F.2d 1037 (9th Cir.1987), and *Bak v. Postal Serv.,* 52 F.3d 241 (9th Cir.1995), lead in opposite directions. *Rivera* followed early cases from other jurisdictions applying a judicially-created exhaustion rule which abrogated ADEA jurisdiction when the plaintiff was simultaneously involved in judicial and administrative proceedings. 830 F.2d at 1039. Eight years later, *Bak* held that such a rule no longer applied and allowed the ADEA case to proceed. 52 F.3d at 244. The government contends that *Bak* hinges on the EEOC's amendment of certain rules, which cannot apply in this case, because Bankston had filed proceedings with the Merit Systems Board, not the EEOC. Our review of the history of the exhaustion rule, as applied to federal

employees' ADEA claims, convinces us that *Bak* recognized that a rule based on administrative efficiency should not be applied punitively where there are no simultaneous administrative and judicial proceedings and where the plaintiff no longer has the right to administrative review of his claim.

The early cases interpreting 29 U.S.C. § 633a, the ADEA provisions for federal employees, developed a split in the circuits as to whether a federal employee who is under no obligation to exhaust remedies in the first place, but who elects to file an administrative complaint, becomes bound to pursue that remedy to resolution on the merits before filing suit. The Sixth Circuit was alone in holding that "the ADEA, unlike the Civil Rights Act, does not require final agency action prior to filing suit" and permitting an ADEA case to proceed simultaneously with EEO proceedings. *Langford v. United States Army Corps of Engineers,* 839 F.2d 1192, 1194(6th Cir.1988).

A number of other circuits held that a federal employee's voluntary election to pursue administrative remedies created an exhaustion requirement. In the first, seminal case applying this doctrine to ADEA claims of federal employees, the Third Circuit held that once a claimant had filed an EEOC proceeding, a court would not have jurisdiction over an ADEA claim until the agency had rendered a final decision. *Purtill v. Harris,* 658 F.2d 134, 138 (3d Cir.1981). Purtill apparently did not contend that he could file a lawsuit at any time after initiating administrative proceedings, but only that he ought to be able to proceed to court if the EEOC failed to render a decision within 180 days. Title VII provided such an escape from the administrative process, but the ADEA did

not.[2] Judge Aldisert reasoned that the 180–day escape clause could not be imported into the ADEA, and he concluded that there were "pragmatic, prudential reasons" for requiring a claimant to complete administrative proceedings before filing a lawsuit:

> Allowing a plaintiff to abandon the administrative remedies he has initiated would tend to frustrate the ability of the agency to deal with complaints. All participants would know that at any moment an impatient complainant could take his claim to court and abort the administrative proceedings. Moreover, such a course would unnecessarily burden courts with cases that otherwise might be terminated successfully by mediation and conciliation.

*Id.* at 138. In *Purtill,* the court held that the lawsuit could not go forward until administrative proceedings were final, but the court did not dismiss Purtill's claim with prejudice. Instead, the court gave Purtill permission to amend his complaint to show that the EEOC had decided his claim, which would permit reinstatement of his lawsuit. *Id.* at 139. So, while *Purtill* prevented duplicative, simultaneous administrative and judicial proceedings, it did not do so by permanently forfeiting Purtill's claim.

Other circuits also held that a federal employee could not file suit while administrative proceedings continued. *White v. Frank,* 895 F.2d 243, 244 (5th Cir.1990) (per curiam) ("[A]n ADEA plaintiff who chooses to appeal the employer's determination to the [EEOC] must await final action by that agency before filing an action in federal district court."); *McGinty v.*

*United States Dep't of Army,* 900 F.2d 1114, 1116–18 (7th Cir.1990) (dismissing suit filed during pendency of EEOC proceeding and suit filed after EEOC proceeding dismissed for untimeliness); *but see id.* at 1119 (Cudahy, J., dissenting) ("Nothing in the relevant statute or regulations leads directly to the conclusion that a claimant's initial decision to pursue administrative remedies is irrevocable.").

In *Castro v. United States,* 775 F.2d 399, 404 (1st Cir.1985) (per curiam), the First Circuit took the rule a step further to bar jurisdiction over an ADEA lawsuit where the plaintiff had dismissed an administrative proceeding *before* filing suit. However, the facts of *Castro* show that administrative exhaustion may have been considered necessary in that case because the plaintiff had failed to notify the EEOC of intent to sue, which is a statutory prerequisite for proceeding directly to court without filing an EEOC complaint under the ADEA. 29 U.S.C. § 633a(d). Diaz Diaz, one of the plaintiff-appellants, filed an EEO complaint and then a Merit Systems Protection Board complaint. The EEOC told him it was cancelling his complaint because he had the Merit Systems matter pending.[3] He then withdrew his Merit Systems appeal. He had no administrative proceedings pending when he filed his lawsuit, but he had not followed either of the two routes available to him: he had neither exhausted administrative remedies, nor filed a notice of intent to sue with the EEOC. *Id.* at 403–04; *see* 29 U.S.C. § 633a(d) (intent to sue requirement); *Limongelli v. Postmaster General,* 707 F.2d 368, 373(9th Cir.1983) (plaintiff

---

2. The 180 day escape hatch has been extended to ADEA claims. 29 C.F.R. § 1614.407 (2002).

3. Regulations provided that when a federal employee filed both EEOC and Merits Systems proceedings, the employee would be deemed to have elected to proceed in the agency where he first filed. 29 C.F.R. § 1613.403 (1985), *now codified at* 29 C.F.R. § 1614.302(b) (2002).

failed to give thirty days' notice to EEOC or to exhaust administrative remedies); *cf. Bohac v. West*, 85 F.3d 306, 313 (7th Cir. 1996) (where plaintiff failed to give thirty days' notice to EEOC, EEOC complaint must be "timely and otherwise properly executed" in order to serve as basis for jurisdiction). The First Circuit, relying on *Purtill*, held that the lawsuit was barred and the claim forfeited because of Diaz Diaz' abandonment of his administrative claims. 775 F.2d at 404. *See also Wrenn v. Secretary*, 918 F.2d 1073, 1078 (2d Cir. 1990) (holding failure to accept offer of full relief in EEO proceedings resulted in failure to exhaust administrative remedies and summary judgment for the defendant).

In *Rivera v. United States Postal Serv.*, 830 F.2d 1037(9th Cir.1987), this Circuit joined the courts who found an exhaustion rule implied in the ADEA for plaintiffs who had voluntarily pursued administrative remedies. Rivera asserted both Title VII and age discrimination claims in an EEO proceeding, which he appealed to the EEOC. *Id.* at 1038. On October 10, 1982, he asked the EEOC to cancel his notice of appeal, and he then filed suit in the district court. The EEOC, however, did not relinquish jurisdiction, and it issued an opinion on the merits on April 21, 1983. We held that because Rivera already had EEOC proceedings pending, his attempt to file a lawsuit was ineffective. Later, after he lost in the EEOC, he could have filed the lawsuit, but since he did not know he had to refile, he failed to do so and therefore forfeited his claim. We reasoned:

> The view has been taken that once a party appeals to a statutory agency, board or commission, the appeal must be "exhausted." To withdraw is to aban-

don one's claim, to fail to exhaust one's remedies. Impatience with the agency does not justify immediate resort to the courts. We think this rule is sound. *Id.* at 1039 (citations omitted). Although *Rivera* involved both a Title VII claim, as to which exhaustion of remedies is statutorily mandated, *see Vinieratos v. United States Dep't of Air Force*, 939 F.2d 762, 767–68 (9th Cir.1991), and an ADEA claim, not subject to a statutory exhaustion requirement, our opinion did not discuss this distinction, and in fact, we cited the Title VII exhaustion requirement, 42 U.S.C. § 2000e–16(c). *See* 830 F.2d at 1039.

Despite the allusions in *Rivera* to abandonment of claims, it is important to recognize that Rivera was apparently unsuccessful in his attempt to abandon his administrative claim—the EEOC issued a decision after he asked it to cancel his appeal and after he filed his lawsuit.[4] *Rivera* thus involved simultaneous administrative and judicial proceedings, rather than an expansion of the exhaustion rule into a case in which all administrative options were defunct when the suit was filed.

In the context of this circuit split, the Supreme Court granted certiorari in *Stevens*, a case presenting the question of whether a federal-employee ADEA claimant who filed an EEOC complaint was required to exhaust his administrative remedies before filing a civil action. *Stevens v. Dep't of Treasury*, 500 U.S. at 9, 111 S.Ct. 1562. Before the Supreme Court, the government abandoned its position that an administrative exhaustion requirement arose by virtue of the claimant invoking administrative procedures. Accordingly, the Supreme Court declined to address

---

4. *But see Greenlaw v. Garrett*, 59 F.3d 994, 1000 n. 17 (9th Cir.1995), in which the court characterized *Rivera* as an abandonment case, rather than a simultaneous proceedings case.

the question. *Id.* at 9–11, 111 S.Ct. 1562. However, Justice Stevens would have addressed the question, and he wrote in his concurrence and dissent, "There is ... no basis from which to infer that a complainant who has voluntarily sought administrative relief must exhaust all administrative remedies before proceeding to court." 500 U.S. at 12, 111 S.Ct. 1562.

After *Stevens,* two courts, including this one, have held that a federal employee may bring a lawsuit under the ADEA despite having earlier abandoned EEOC proceedings. In *Adler v. Espy,* 35 F.3d 263 (7th Cir.1994), Judge Posner distinguished *McGinty* (the Seventh Circuit case which had imposed the exhaustion requirement) by relying on a change in EEOC regulations, which had been amended to provide that EEOC proceedings would be dismissed if the complainant filed a lawsuit (now codified at 29 C.F.R. § 1614.409 (2002)). Judge Posner took this change in the regulation to mean that the EEOC found it preferable to abort administrative proceedings, rather than to require claimants to exhaust such remedies:

> The principal ground for [imposing an exhaustion requirement] is that agencies shouldn't be put to the bother of conducting administrative proceedings from which the complainant can decamp at any time without consequence. That is a weighty consideration, and we do not retreat an inch from it. But it is a consideration designed for the benefit of the agencies, not of the judges, and if the agencies don't want it, there is no reason for us to give it great weight.

35 F.3d at 265 (citation omitted). *See also Bornholdt v. Brady,* 869 F.2d 57, 63 (2d Cir.1989) (remarking in dictum that new EEOC regulation altered exhaustion rule). In addition to the agency's acquiescence in allowing claimants to withdraw from administrative proceedings, Judge Posner also considered the harshness that would result from making the claimant's first election of remedy irrevocable: under the new regulation, claimants' hope of administrative remedy would disappear as soon as they filed a lawsuit, and an exhaustion rule barring jurisdiction because they had once filed a now-defunct administrative claim would work a forfeiture of their claims. 35 F.3d at 264–65 ("Considering that the administrative route is entirely optional with the complainant, this seems an awfully harsh sanction. . . ."). Judge Posner also observed that in *Stevens* the government had abandoned the argument that exhaustion was required. *Id.* at 264.

This Circuit followed *Adler* in *Bak v. Postal Serv.,* 52 F.3d 241 (9th Cir.1995). Bak filed his race and age discrimination claims with the EEOC and litigated his race claim there, but failed to follow up on the age claim. After receiving final agency action on his race claim, Bak filed an ADEA suit in the federal district court. The district court dismissed for failure to exhaust administrative remedies. Bak conceded that he abandoned his age discrimination claim before the EEOC. On appeal, the government reversed its position and conceded that Bak was not subject to an exhaustion requirement. *Id.* at 243. Judge T.G. Nelson cited four reasons for holding that Bak's age case was not barred by failure to pursue his age claim administratively: (1) the government's abandonment in *Stevens* and in *Bak* of its position that exhaustion was required, (2) the change in EEOC regulations, (3) the fact that administrative and judicial proceedings would not be proceeding simultaneously, and (4) the fact that a contrary holding would result in a forfeiture of Bak's claim. Judge Nelson wrote:

> [W]e hold that a claimant is no longer required to exhaust his administrative remedies with regard to an age discrimi-

nation claim prior to filing a civil suit. The result of [29 C.F.R. § ] 1613.513, in effect at the time Bak filed his complaint, is to terminate any unexhausted administrative proceedings when a claimant files a civil suit. Similarly, an exhaustion requirement would terminate any civil suit filed. Thus, the joint effect of the amended regulations and exhaustion requirement would be to leave the claimant without any avenue of relief.

... [A]n exhaustion requirement in this case would still prejudice Bak because he has no forum in which to bring his age discrimination claim: the time for filing another administrative complaint has expired, and an exhaustion requirement would preclude a civil suit.

The primary goal of the exhaustion requirement is to prevent simultaneous proceedings regarding the same claim. The amended regulations resolve this problem, and the Government concedes exhaustion is not necessary.

*Id.* at 244 (citation and footnote omitted).[5]

█ A straightforward reading of *Bak* leads us to avoid applying an exhaustion rule in this case, where there are no simul-

taneous administrative and judicial proceedings and application of the rule would result in a forfeiture of Bankston's claim. Bankston dismissed his administrative proceeding before filing suit and had no right to further administrative relief. When an employee has dismissed administrative proceedings before filing suit, the court no longer has the ability to avoid future duplicative efforts, although it may still punish the claimant for having wasted the agency's time. This Court chose not to impose the rule punitively in *Bak* and we see no reason to do so here.

However, the government contends that *Bak* differs crucially from this case because it involved EEOC proceedings and the EEOC regulations terminated administrative proceedings once suit was filed. Merit Systems proceedings are not automatically terminated by the filing of a lawsuit. This distinction is not compelling. The significance of the amended EEOC regulation is that there would never be EEOC proceedings going on at the same time as a lawsuit, *see* 29 C.F.R. § 1614.409, so the rationale for the exhaustion rule was diminished. But there are no admin-

---

**5.** In contrast to these cases permitting a claimant to sue after withdrawing from EEOC proceedings, the Second Circuit reaffirmed the exhaustion requirement, after *Stevens,* for a claimant who abandoned a Merit Systems appeal, even though the requirement led to a forfeiture. In *Economou v. Caldera,* 286 F.3d 144 (2d Cir.), *cert. denied,* 537 U.S. 975, 123 S.Ct. 447, 154 L.Ed.2d 333 (2002), an ADEA claimant requested an EEO counselor, but failed to file a formal complaint with the EEO before going to the Merit Systems Protection Board and filing an appeal there. Later, he filed a formal EEOC complaint. He told the Merit Systems Protection Board that he preferred to pursue his matter through the EEOC, so the Board dismissed his Merit Systems appeal. After 180 days had passed since he filed the EEOC complaint, the EEOC told him he could sue in a lawsuit, but when he did, summary judgment was entered against

him for failure to exhaust his Merit Systems Protection Board remedy. The Second Circuit held that Economou's initial choice to file the Merit Systems appeal was irrevocable and his failure to pursue that appeal to a resolution on the merits barred later jurisdiction over an ADEA suit:

As stated in the regulations and echoed in this Court's prior decisions, a plaintiff is bound to exhaust administrative remedies in the forum in which he first files a formal petition. Neither a prepetition inquiry to another agency, nor the apparently harsh result in this case alters this rule.

*Id.* at 150. The Second Circuit adverted in a footnote to the fact that the ADEA does not require administrative exhaustion, but it relied on *Wrenn* to establish that "a plaintiff who chooses to begin the administrative review process is obliged to exhaust that review before filing a civil action." *Id.* at 149 n. 8.

istrative proceedings going on at the same time as *this* lawsuit, so the rationale for the exhaustion rule is similarly diminished in this case. The government's argument would only make sense if the Merit Systems appeal was proceeding simultaneously with this suit.

\* \* \*

After carefully considering the relevant statutes and caselaw, we cannot conclude that Bankston's dismissal of his Merit Systems appeal bars jurisdiction over his ADEA suit. The ADEA itself does not require Bankston to exhaust administrative remedies before filing suit, nor does the Civil Service Reform Act explicitly limit the jurisdiction created by the ADEA. The policy concern for administrative efficiency expressed in earlier cases is attenuated or even eliminated here because Bankston has no administrative remedy currently pending or available in the future. In fine, we see no statutory or other obstacle to jurisdiction over his ADEA suit.

Accordingly, we reverse the district court's dismissal of Bankston's complaint.

REVERSED and REMANDED.